UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MELANIE ANNE TATUM,

      Plaintiff,

v.                                     Case No. 5:17cv262-CJK

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

      Defendant.
_____/

## MEMORANDUM ORDER

This matter is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Melanie Anne Tatum's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in the case, including entry of final judgment. Upon review of the record before the court, I conclude certain findings of fact and determinations of the Commissioner are

not supported by substantial evidence.  The decision of the Commissioner, therefore, will be reversed and the matter will be remanded for further proceedings consistent with this order.

## ISSUES ON REVIEW

Ms. Tatum, who will be referred to as claimant, plaintiff, or by name, raises 2 issues on appeal.  She argues the ALJ erred in evaluating (1) the opinion evidence of record; and (2) her credibility.

## PROCEDURAL HISTORY

Ms. Tatum filed applications for DIB and SSI on October 1, 2014, alleging disability beginning May 16, 2010.  T. 219-32.[1]  She later amended the alleged onset date to December 8, 2014.  T. 251-52.  Her claims were denied initially and on reconsideration.  T. 82-131, 146-56, 175-82.  Ms. Tatum appeared for a hearing before an Administrative Law Judge ("ALJ") on October 12, 2016.  T. 42-81.  On November 16, 2016, the ALJ issued a decision denying Ms. Tatum's applications for benefits.  T. 7-31.  Ms. Tatum petitioned the Appeals Council for review of the ALJ's decision.  T. 1.  The Appeals Council denied the request.  T. 1-6.  The ALJ's decision

---

[1] The administrative record, as filed by the Commissioner, consists of 10 volumes (docs. 14-1 through 14-10) and has 734 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

thus became the final determination of the Commissioner.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

- "The claimant meets the insured status requirements of the Social Security Act through December 31, 2015." T. 12.

- "The claimant has not engaged in substantial gainful activity since December 8, 2014, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)." T. 12.

- "The claimant has the following severe impairments: lumbar scoliosis; degenerative disc disease; and major depressive disorder, recurrent, moderate (20 CFR 404.1520(c) and 416.920(c))." T. 12.

- "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." T. 14.

- "[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently balance and climb ramps and stairs. She can occasionally stoop, kneel, crouch, crawl and climb ladders, ropes or scaffolds. She is limited to performing simple, routine tasks." T. 18.

- "The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." T. 24.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." T. 25.

- "The claimant has not been under a disability, as defined in the Social Security Act, from December 8, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." T. 26.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936

F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d

1079, 1082 (11th Cir. 1996)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[2]

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). To be eligible for disability benefits, a claimant must prove she became disabled prior

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

to the expiration of her date last insured.  *See* 42 U.S.C. §§ 416(i)(3), 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in 5 steps:

1.  If the claimant is performing substantial gainful activity, she is not disabled.

2.  If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.  If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from performing past relevant work, she is not disabled.[3]

_____

[3] Claimant bears the burden of establishing a severe impairment that keeps her from performing past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

5. Even if the claimant's impairments prevent her from performing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

Step 5 (or step 4 in cases in which the ALJ decides a claimant can perform past work) is generally where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity. The ALJ establishes RFC, utilizing the impairments identified at step 2, by interpretation of (1) the medical evidence; and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step 5.[4] "[R]esidual functional capacity is the most [a claimant] can still do despite [claimant's] limitations.[5] 20 C.F.R. §§ 404.1545(a)(1),

---

[4] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20. C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[5] In addition to this rather terse definition of RFC, the Regulations describe how the Commissioner makes the assessment:

(3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 416.912(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative

416.945(a)(1).  Often, both the medical evidence and the accuracy of a claimant's

subjective complaints are subject to a degree of conflict and that conflict leads, as in

this case, to the points raised on judicial review by the disappointed claimant.

### FACT BACKGROUND[6]

Ms. Tatum was 52 years old on the alleged onset date and 54 years old on the

date of the ALJ's decision.  T. 26, 219, 252.  She has at least a high school education

and past work experience as a bookkeeper, family associate at child protective

services, and clerk/stocker/cleaner at a convenient store.  T. 274-88, 304, 443.  She

alleged disability due to pancreatitis, back problems, shortness of breath, a right knee

issue, a right hip/pelvic area issue, a neck issue, a right shoulder issue, and

---

examination(s) if necessary, and making every reasonable effort to help you get
medical reports from your own medical sources.  (See §§ 416.912(d) through (f).)
We will consider any statements about what you can still do that have been provided
by medical sources, whether or not they are based on formal medical examinations.
(See § 416.913.) We will also consider descriptions and observations of your
limitations from your impairment(s), including limitations that result from your
symptoms, such as pain, provided by you, your family, neighbors, friends or other
persons.  (See paragraph (e) of this section and § 416.929.)[.]

20 C.F.R. § 416.945(a)(3).

[6]  The plaintiff included no factual recitation in her memorandum, and the government's
factual recitation is scant.  Given the issues raised, the undersigned discerns no utility in setting forth
a detailed factual/medical history and, instead, will address the pertinent facts in the Analysis section
below.

depression. T. 303. The ALJ found plaintiff had severe impairments of lumbar scoliosis, degenerative disc disease, and major depressive disorder. T. 24. The ALJ limited plaintiff to light work with postural restrictions to accommodate for lumbar scoliosis and degenerative disc disease and simple, routine tasks in order to accommodate for pain distraction and major depressive disorder. T. 24.

<u>ANALYSIS</u>

1.    Opinion Evidence

Plaintiff claims the ALJ erred in evaluating the opinion evidence of record when determining RFC. Specifically, plaintiff alleges the ALJ erred with regard to the weight given the opinions of 3 consultative examiners – Dr. Murali Krishna Maddipati and Dr. Efren Baltazar, both of whom assessed plaintiff at the Commissioner's request, and Dr. Kamel Elzawahry, who examined plaintiff at her counsel's request. As recognized in the regulations, an ALJ "may . . . ask for medical evidence from expert medical sources" and "will consider this evidence . . . as appropriate." 20 C.F.R. § 404.1513a(b)(2). When considering medical opinions, the ALJ looks to (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical

evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); 416.927(c)(3)-(6). Although an ALJ is required to give medical opinions of treating sources substantial or considerable weight absent good cause, *see Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. § 404.927(c)(2), the opinion of a non-treating doctor, such as a one-time examiner, is not entitled to deference or special consideration. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Hence, an ALJ need not demonstrate good cause for the weight assigned to such opinions. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013); *cf.* 20 C.F.R. § 416.927(c)(2) (requiring ALJs to provide good reasons for the weight assigned treating doctors' opinions).

In addition, where a physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). In determining whether an ALJ gave proper weight to a physician's

opinion, the court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [s]he articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 823 (11th Cir. 2015) (citation omitted).

An ALJ may choose to accept some conclusions – or restrictions – within an opinion while rejecting others. If such a choice is made, in addition to explaining the overall weight given to a particular medical opinion, the ALJ must explain "'with at least some measure of clarity the grounds for [her] decision'" to adopt particular aspects of a medical opinion. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Failure to explain the rationale for crediting only certain aspects of an opinion will result in a reviewing court "declin[ing] to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id*.

### A.    Dr. Maddipati

Dr. Maddipati examined plaintiff at the Commissioner's request. He found plaintiff suffered from chronic back, neck, and bilateral shoulder pain and could sit for up to 30 minutes at a time before having to change position and stand for up to 15 minutes. T. 347. He noted plaintiff's "range of motion [was] normal in all joints,

except lower back and neck, where [s]he has some restricted flexion and extension due to pain." T. 347. He found claimant "[a]ble to perform repetitive activities related to upper extremities with no difficulty," but to have "moderate difficulty to perform repetitive movements . . . involving lower back and neck, including lifting, bending, and carrying." T. 347. Dr. Maddipati found normal strength and tone in all extremities. T. 347. He also found "no impairment in cognitive functions related to work like concentration, understanding, and memory" and good thought process. T. 347. He advised Ms. Tatum to take anti-inflammatory medications as needed for pain and opined she had "mild to moderate functional limitations for work requiring moderate to severe physical effort, involving duties requiring repeated movements of lower back and knees." T. 347.

The ALJ gave Dr. Maddipati's opinion great weight, finding it "consistent with the overall evidence of record and . . . supported by personal clinical observations and examinations." T. 23. The ALJ also noted Dr. Maddipati specialized in internal medicine. T. 23. Plaintiff now says that in giving great weight to Dr. Maddipati's opinion, the ALJ failed to acknowledge, much less incorporate, the sitting and standing limitations Dr. Maddipati imposed. Plaintiff's position is well-taken.

Although the ALJ gave great weight to Dr. Maddipati's opinion and incorporated portions thereof in the RFC, she did not explain the failure to include the sitting and standing restrictions Dr. Maddipati imposed.[7] The ALJ thus erred, and the matter must be remanded for an explanation of the ALJ's decision in that regard.

B.    Dr. Baltazar

The ALJ also gave great weight to the opinion of Dr. Baltazar, a non-examining physician, finding it "supported with a relevant explanation and . . . consistent with the record as a whole." T. 23. Upon review of the record, Dr. Baltazar found plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk and sit about 6 hours in an 8-hour workday; push and/or pull without limitation; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. T. 112-13. Claimant argues the ALJ erred in giving great weight to Dr. Baltazar's opinion because Dr. Baltazar failed to address Dr. Maddipati's opinion, including the sitting and standing limitations Dr. Maddipati imposed, and indicated there was no medical opinion evidence in the record despite being provided a copy of Dr. Maddipati's opinion. The ALJ's decision to give great

_____

[7] The ALJ imposed far less restrictive sitting and standing limitations. T. 24.

weight to Dr. Baltazar's opinion is unsupported by substantial evidence in the record, because Dr. Baltazar's opinion appears to have been based on an incomplete review of the record. On remand, therefore, the ALJ also shall address the decision to give great weight to Dr. Baltazar's opinion, where Dr. Baltazar did not address Dr. Maddipati's opinion and, instead, indicated there was no opinion evidence of record.

C.     Dr. Elzawahry

Dr. Elzawahry, who examined plaintiff at her counsel's request, completed a Medical Source Statement in which he indicated Ms. Tatum could occasionally lift less than 10 pounds, rarely lift 10 pounds, never lift 20 pounds, occasionally twist, rarely stoop, and never crouch or squat. T. 463. He said she could sit for up to 30 minutes at a time, stand for up to 10 minutes at a time, and sit/stand/walk for less than 2 hours in an 8-hour workday. T. 462. He also said plaintiff would be required to take unscheduled breaks often and be "off task" 25 percent or more of the workday due to symptoms interfering with attention and concentration. T. 463-64. He found plaintiff incapable of even low stress work and opined she would be absent from work more than 4 days per month due to impairments. T. 464.

The ALJ afforded only partial weight to Dr. Elzawahry's opinion, declaring, " it [was] based on a single examination and appears to rely heavily on the claimant's self-reports, and makes very specific findings about off-task behaviors and absences that are unsupported elsewhere in the record." T. 23. "Additionally," the ALJ explained, "the preprinted non-standard form, ostensibly supplied to Dr. Elzawahry by the claimant's attorney, only contains check-box options" for "never," "rarely," "occasionally," and "frequently," with no options for "no restriction" or "continuously." T. 23. In the ALJ's view, "use of this form calls into question the accuracy of the assessment and renders it less persuasive." T. 23.

Plaintiff argues "[t]he ALJ's first stated reason for giving little weight to this opinion is inconsistent with the ALJ's earlier finding that the December 2014 consultative report of Dr. Maddipati was entitled to 'great weight' despite also being based upon a single examination . . . ." Doc. 16 at p. 8. The ALJ's decision to give only partial weight to Dr. Elzawahry's opinion because Dr. Elzawahry examined plaintiff only once – while giving great weight to the opinion of Dr. Maddipati, who also examined plaintiff only once – is not erroneous, as the ALJ weighted the opinions based on other factors as well. In particular, Dr. Elzawahry appeared to rely

heavily on Ms. Tatum's self-reports and made "very specific findings about off-task behaviors and absences that are unsupported elsewhere in the record." T. 23.

According to Ms. Tatum, "[t]he ALJ's next reason for giving only 'partial weight' to Dr. Elzawahry's opinion is that his findings, regarding the percentage of time Ms. Tatum would likely be off-task' during a typical workday and the number of days she would likely be absent from work in a typical month, are 'unsupported elsewhere in the record.'" Doc. 16 at p. 9. Ms. Tatum contends "Dr. Elzawahry's opinion in this respect is supported by his examination of Ms. Tatum and review of her objective records which supports his findings of severe ongoing neck and back pain . . . ." Doc. 16 at p. 9. Ms. Tatum posits that even if that were not the case, "the remainder of Dr. Elzawahry's findings regarding functional limitations are not addressed by this rationale and would support a far more limited . . . [RFC] assessment than the assessment made by the ALJ in this case, which on their own would eliminate the ability to perform any substantial gainful activity." Doc. 16 at p. 9.

Substantial evidence supports the ALJ's decision to afford little weight to Dr. Elzawahry's opinion. Although the record contains evidence of impairments, substantial evidence in the record supports the ALJ's conclusion any such

impairments were not of the severity Dr. Elzawahry opined. As the ALJ observed, at the December 2014 consultative examination with Dr. Maddipati, claimant was alert, fully oriented, and in no acute distress. T. 21, 346. Her chest and lung exam revealed no wheezes or crackles, and she had "quiet, even and easy respiratory effort with no use of accessory muscles." T. 21, 346. Cardiovascular auscultation revealed regular heart rate and rhythm, normal heart sounds, and no murmurs. T. 21, 346. She had some restricted range of motion in the lower back and neck related to flexion and extension, but range of motion otherwise was normal in all joints. T. 21, 346-47. She was able to perform repetitive activities related to the upper extremities with no difficulty, but had moderate difficulty performing repetitive movements involving the lower back and neck. T. 347. She had normal strength and tone in all extremities. T. 21, 347. She had no impairment in cognitive function related to work-like concentration, understanding, and memory. T. 21, 347. She had good thought process. T. 21, 347. She was taking Aleve and Tylenol for pain and not seeing a doctor. T. 21, 347.

At the August 2016 examination with Dr. Elzawahry, Ms. Tatum was pleasant, cooperative, and in no acute distress. T. 22, 467. She had a normal mood and affect. T. 22, 467. She followed simple and complex commands. T. 22, 467-68. She had

normal immediate recall and short- and long-term memory. T. 22, 468. Her ability to calculate and abstract, attention span, and judgment were normal. T. 22, 468. She demonstrated normal naming, repetition, and spelling. T. 22, 468. Although Dr. Elzawahry noted neurological deficits, including decreased memory, difficulty with concentration, headaches, incoordination, numbness, a spinning sensation, tingling, unsteadiness, and weakness in the extremities, as well as pain in the neck, pelvis, back, joints, muscles, and abdomen, his opinion appears to be based in substantial part on plaintiff's subjective complaints, and the restrictions he imposed are unsupported by objective medical evidence in the record.

Turning to the ALJ's final reason for giving little weight to Dr. Elzawahry's opinion – the fact it was expressed on a pre-printed form – the law concerning conclusory statements is particularly applied where a doctor expresses opinions on a preprinted or "check-off" form. Such opinion evidence will not bind the Commissioner. Indeed, courts have found such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein. *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they

are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983). These pronouncements certainly suggest that where a party wishes to rely upon those opinions expressed on a check-off form, that party would be well-served to scour the record for actual, supportive medical evidence, consistent with the short-hand conclusions. The absence of such medical evidence may weaken or obliterate the probative value of the form.

As set forth above, the ALJ specified certain limitations of the pre-printed Medical Source Statement that she found called into question the accuracy of Dr. Elzawahry's assessment and rendered it less persuasive. Ms. Tatum argues the limitations specified by the ALJ are of no consequence to this case. Even if that is true, the ALJ's decision to discount Dr. Elzawhary's opinion on that basis is harmless error as such forms are generally entitled to little weight and, in any event, the ALJ's decision to give only partial weight to Dr. Elzawhary's opinion is supported by other substantial evidence in the record.

2.     Credibility Determination

Ms. Tatum also challenges the ALJ's credibility determination.  A claimant who attempts to prove disability based on subjective complaints must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing her medical condition could reasonably be expected to give rise to the alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26.  If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms, but the claimant establishes she has an impairment that could reasonably be expected to produce the symptoms alleged, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26.  Notably, in determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The ALJ found Ms. Tatum's medically determinable impairments could reasonably be expected to produce the symptoms alleged but Ms. Tatum's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." T. 22. Plaintiff argues that, pursuant to SSR 16-3p, before an ALJ finds a claimant's statements inconsistent with the evidence of record based on lack of treatment, the ALJ should consider reasons the claimant may not have sought treatment, including finances and access to free or lost-cost medical care. According to Ms. Tatum, "the ALJ was required to consider [her] explanation regarding . . . lack of health insurance and income in evaluating the consistency of her testimony with the evidence of record." Doc. 16 at p. 13. Plaintiff also complains the ALJ "did not 'articulate explicit and adequate reasons' for her evaluation of Ms. Tatum's testimony or explain which of her symptoms the ALJ found inconsistent with the evidence of record and why." Doc. 16 at p. 14.

The ALJ's reasons for discounting plaintiff's credibility are supported by substantial evidence in the record. Contrary to plaintiff's assertion, the ALJ expressly considered plaintiff's statements about inability to afford treatment and reviewed records predating the alleged onset date for that reason. T. 19. As the ALJ noted,

however, despite Ms. Tatum's alleged symptoms and claimed inability to afford treatment, in April 2013, she was still smoking cigarettes and marijuana. T. 20, 394. In August 2013, she was smoking 1.5 packs of cigarettes per day. T. 20, 423. In December 2013, she was smoking cigarettes every day. T. 20, 721. In March 2014, she went to the emergency room with a cough, congestion, and shortness of breath. T. 21, 384. She was still smoking cigarettes every day and using marijuana. T. 21, 385. She continued smoking daily as of January 2015. T. 21, 335. If Ms. Tatum's breathing issues or inability to afford treatment were as severe as alleged, one could reasonably expect she would have stopped smoking, due to the same economic constraints she now says limited her ability to obtain medical care.

Also contrary to plaintiff's contention, the ALJ set forth portions of plaintiff's testimony she found lacking in credibility. Specifically, the ALJ recounted plaintiff's testimony that she "experiences chronic back and knee pain, as well as headaches that occur every other day and are worsening." T. 22. The ALJ also noted Ms. Tatum "claims to lie down for most of the day and says that she is only productive (up and moving around) for about 3 hours each day" and testified she "still receives no treatment for any of her complaints because of limited income and lack of health insurance coverage." T. 22.

The ALJ set forth medical evidence she found inconsistent with plaintiff's testimony in that regard.  For example, in April 2013, Ms. Tatum went to the emergency department complaining of back and flank pain.  T. 20, 393.  A musculoskeletal examination was negative for lumbar, midline, and paraspinous spasm.  T. 20, 395.  There was no limited range of motion, costovertebral angle tenderness, or tenderness to palpation. T. 20, 395.  Ms. Tatum had a negative straight leg raise test and benign neurological examination. T. 20, 395.  Lumbar X-rays were normal, except for scoliosis.  T. 20, 395.  Ms. Tatum was treated for back pain and released in good/stable condition.  T. 20, 396.

As set forth above, in December 2014, plaintiff was alert, fully oriented, well-groomed, well-developed, and in no acute distress.  T. 21, 346.  Her chest and lung, cardiovascular, and abdominal exams revealed no abnormalities.  T. 21, 346. There was no edema.  T. 346.  Although there was restricted range of motion in the lower back and neck related to pain in flexion and extension, range of motion otherwise was normal in all joints.  T. 21, 346-47.  Ms. Tatum had normal strength and tone in the extremities. T. 21, 347.  There was no noted impairment in cognitive function. T. 21, 347. Dr. Maddipati noted chronic back, neck, and bilateral shoulder pain, but lumbar x-rays showed only mild lumbar scoliosis.  T. 21, 347, 349.  Ms.

Tatum was taking Aleve and Tylenol for pain and seeking no medical treatment. T. 21, 347. Dr. Maddipati found only "mild to moderate functional limitations for work requiring moderate to severe physical effort, involving duties requiring repeated movements of lower back and knees." T. 347.

Although Dr. Elzawahry noted certain pain and abnormalities in August 2016, Ms. Tatum was pleasant, cooperative, well-developed, well-nourished, and in no acute distress. T. 22, 467. She had normal muscle bulk, contour, and tone, and her strength was 5/5 throughout. T. 22, 468. She also had normal coordination, sensation, and reflexes. T. 22, 468. And her mental status was normal. T. 22, 467-68. Hence, as the ALJ found, although the medical findings may provide an objective basis for some of plaintiff's impairments and other symptoms, they do not reflect symptoms of the severity alleged, and the ALJ articulated explicit and adequate reasons for her decision in that regard.

## CONCLUSION

In sum, the ALJ erred in 2 respects: (1) failing to explain the reason for giving great weight to Dr. Maddipati's opinion but not incorporating in the RFC the sitting and standing limitations Dr. Maddipati imposed; and (2) giving great weight to Dr. Baltazar's opinion despite the fact Dr. Baltazar did not address Dr. Maddipati's

Case No. 5:17cv262-CJK

opinion and, instead, indicated there was no opinion evidence of record. Substantial evidence otherwise supports the ALJ's decision, including the ALJ's credibility determination.[8] *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

**ACCORDINGLY it is ORDERED:**

1.      The decision of the Commissioner is REVERSED on the limited bases set forth above, and the matter is REMANDED for explanations of the ALJ's decisions to (1) give great weight to Dr. Maddipati's opinion but not incorporate in the RFC the sitting and standing limitations Dr. Maddipati imposed; and (2) give great weight to Dr. Baltazar's opinion despite the fact Dr. Baltazar did not address Dr. Maddipati's opinion and, instead, indicated there was no opinion evidence of record.

2.      The clerk shall enter judgment for the plaintiff and close the file.

---

[8] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review. *See Gilson v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

**DONE and ORDERED** this 7th day of December, 2018.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**